# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

JUDGE PETER J. WALSH

824 MARKET STREET
WILMINGTON, DE 19801
(302) 252-2925

December 8, 2006

Clementine H. Knighton
1121 Garfield Drive
Dover, DE 19901

**Re:  Clementine H. Knighton**
**Case No. 06-10406**

Dear Ms. Knighton:

As a follow-up to yesterday's hearing, this is in response to your request (Doc. # 37) to instruct the Social Security Administration ("SSA") to pay you $7,553 in compensation for previous underpayment.

You filed a voluntary petition for Chapter 7 Bankruptcy on April 24, 2006.  On June 26, 2006 you filed an amended schedule F to include a $10,756 claim from the SSA for overpayment of Social Security benefits.  (Doc. # 22).  On August 12, 2006 you received a letter from the SSA informing you that the SSA had failed to pay you seven monthly payments of $1,079 for the months of January through July 2006, totaling $7,553.[1]   (Doc. # 37, att. 1).  The

---

[1] You claim that you received this letter on August 12, 2006. (Doc. # 37).  However, the letter itself is dated August 18, 2006.  (Doc. # 37, att. 1).

SSA stated that instead of paying you $7,553, it would offset this amount against the money that you owed the SSA for a previous overpayment. (Id.). You received a discharge on September 12, 2006, which included a discharge from the SSA's claim of $10,756. (Doc. # 33). In your October 25, 2006 letter to the Court you request that the SSA be compelled to pay you $7,553 and be prevented from offsetting this amount against the previous debt that you believe was discharged. (Doc. # 37).

Based on the limited information before the Court (and absent an adversarial contest with respect to your request), it appears that the SSA is not entitled to offset the $10,756 overpayment with the $7,553 underpayment for the following reasons: (1) a final discharge of your debts has been entered, and there appears to be no statutorily sufficient reason for revoking that discharge; (2) even if the discharge were revoked, the SSA could not offset the underpayments because it appears that that asset never became property of the estate.

## I. Revocation of a Discharge

The first problem with the SSA's attempt to setoff your claim for the underpayment against its own claim for the overpayment is that the SSA's claim was discharged on September 12, 2006. (Doc. # 33). The SSA may not assert a right to a discharged debt unless the discharge is revoked. Section 727 of the

Bankruptcy Code provides for the revocation of an order of discharge:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
>
> (3) the debtor committed an act specified in subsection (a)(6) of this section; or
>
> (4) the debtor has failed to explain satisfactorily--
>
> (A) a material misstatement in an audit referred to in section 586(f) of title 28; or
>
> (B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

The SSA may request a revocation of the discharge, arguing that you received notice of the underpayment from the August 18, 2006 letter—-well before the discharge on September 12, 2006-—and therefore had an obligation to report to the Court that you had more assets that should enter the estate.  Having failed to do so, the SSA could argue for revocation of the discharge under § 727(d)(2).  However, your failure to report the underpayment to the

Court before the discharge does not appear to have been a knowing attempt to defraud the Court or your creditors.  The SSA's August 18, 2006 letter indicated that you were not entitled to receive the $7,553 that the SSA owed you from January through July 2006.  I do not believe you can be faulted for failing to disclose assets that the SSA asserted you would never receive.  Moreover, your October 25, 2006 letter to the Court disclosing the existence of the underpayment and expressing a belief that you were still entitled to the $7,553 is completely inconsistent with the notion that you intended to conceal assets from the Court and your creditors.

As it seems clear you did not knowingly and fraudulently fail to report the acquisition of a claim for $7,553, there are no grounds for revocation of the discharge.  Thus, the SSA should not be able to offset the underpayment against the previous overpayment, which has been discharged.

## II. The Underpayment Did Not Enter the Estate

Even if the discharge were revoked, the SSA should still be unable to offset its claim against your claim.  The SSA might argue that they should be entitled to setoff under § 553(a), which states:

> this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

However, in order to justify this setoff, the SSA would have to

5

show that the underpayment was a claim that "arose before the commencement of the case," or in other words, before April 24, 2006 when you filed for bankruptcy.  The SSA might also argue that they should be entitled to setoff your claim under § 106(c), which states:

> Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

This section presents the same problem, as it only applies to "property of the estate."

It is not at all clear from the limited facts available to the Court that the underpayments are property of the estate. Section 541(a)(1) states that "property of the estate" includes *inter alia* "all legal or equitable interests of the debtor in property as of the commencement of the case." Assets obtained by a debtor subsequent to the filing of a bankruptcy petition generally do not enter the bankruptcy estate, and therefore are not susceptible to setoffs.  While it is clear that you had a legal interest in the underpayments, it is not clear whether you had this interest at the commencement of the case.  Property that an individual debtor obtains after filing for bankruptcy can still become property of the estate if it "is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' [of the estate]."  <u>In re Glenn</u>, 207 B.R.

418, 421 (E.D.P.A. 1997) (citing <u>Segal v. Rochelle</u>, 382 U.S. 375, 380 (1966)).

The underpayments that the SSA owes you are for the months of January through July, 2006. The underpayments for January, February, March, and perhaps April (if the April payment was due before you filed on April 24) are "rooted in the pre-bankruptcy past" in the sense that the SSA apparently should have paid you this money before you filed for bankruptcy. However, it remains unclear to the Court why the SSA did not make these payments, and what factors are used to determine the amount of your payments. Your legal interest in the payments you did not receive was created the moment each payment became overdue, then it is possible that the underpayments that occurred before filing could be considered property of the estate. But if there were factors that arose after the filing that the SSA used to determine whether you were due to receive payments, then the underpayments probably would not enter the estate, and the SSA would have no right to setoff regardless of whether the discharge is revoked or not.

I am sending a copy of this letter to the SSA (at the address shown on the August 18, 2006 letter) since a representative of the SSA did not appear at yesterday's hearing. However, given the general nature of the address (no SSA person is identified), I suggest that you pursue this matter directly with the SSA representative identified in your October 25, 1006 letter. I am

enclosing a copy of this letter for you to give to him.

       If this matter is not resolved with the SSA, you can make a further request to the Court.

       Very truly yours,

       Peter J. Walsh

cc: Social Security Administration